UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES BAILEY,

                Plaintiff,

v.

                                      Case No. 3:19-cv-720-J-34MCR

WARDEN ROBERT SMITH, JR.,
et al.,

                Defendants.

_____

### **ORDER**

### **I. Status**

Plaintiff James Bailey, an inmate of the Florida penal system, initiated this action on June 13, 2019, under the mailbox rule, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1).[1] In the Complaint, Bailey asserts claims pursuant to 42 U.S.C. § 1983 against seven John Doe Defendants. He states that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from several inmates who assaulted him at the Reception and Medical Center (RMC). As relief, he requests compensatory and punitive damages as well as injunctive and declaratory relief. In compliance with the Court's request, the Florida Department of Corrections (FDOC) identified the Warden as Robert Smith, Jr.; the Assistant Warden as

---

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Major Richard Lukens; the Colonel as Stanley Peterson; and the Sergeant as Steven Potosky. See Notice to Court Regarding Service of Process for Defendants (Doc. 9) at 1. However, the Department stated that it was unable to identify "Major Not Known," and the two "Not Known Does." See id. at 1-2. Accordingly, the Court dismissed all claims against Defendants "Major Not Known" and the two "Not Known Does" on January 10, 2020. See Order (Doc. 14); Complaint at 3, 12.

This matter is before the Court on Defendants Lukens, Smith, Peterson, and Potosky's Motion to Dismiss (Motion; Doc. 21). The Court advised Bailey that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 13). Bailey filed a response in opposition to the Motion. See Response (Doc. 22). Thus, Defendants' Motion is ripe for review.

## II. Plaintiff's Allegations[2]

Bailey contends that he was exposed to a known risk of danger when the April 18, 2018 night shift or April 19, 2018 day shift I-block sergeant and officers allowed his assailants to enter the wing to rob him. See Complaint at 15. He also asserts that they failed to protect him from the inmate attackers. See id. Additionally, he maintains that the Warden, Assistant Warden, and Colonel ignored the history of widespread abuse and

---

[2] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

their officers' misconduct. See id. As to the underlying facts, Bailey asserts that the FDOC transferred him to RMC on or about April 11, 2018, for physical therapy on his back. See id. at 5. He alleges that four inmates (who were not assigned to his wing) attacked him as they tried to rob him on the morning of April 19, 2018. See id. at 5, 12-14. According to Bailey, he tried to call for help, but one of the assailants told him that no one would respond to his plea for assistance. See id. at 12. He states that the assailants called the officers after the attack to unlock the door to wing two, so they could return to their assigned wings. See id. He avers that he "cleaned himself" and "went through count." Id. at 12-13. After the count, he went to a dental call-out where one of the attackers told him that "they would be coming back to finish what they started." Id. at 13. According to Bailey, the dentist would not work on him due to his injuries (a "severely displaced" nose and "swollen and bruised" face), and he was referred to an ear, nose, and throat (ENT) doctor. Id. Bailey asserts that he returned to his dormitory where he talked to other inmates about what the assailant had said to him, and then decided to seek protective management (PM) custody. See id. He states that he spoke to an unknown officer about "everything that happened" and requested protection, but the officer mocked him and refused to give him protection. Id.

Bailey alleges that, "[w]ith no other choice[,]" he went to the chow hall where he asked a sergeant for protection. Id. According to Bailey, when the sergeant saw Bailey's face, he asked Bailey what happened, and after Bailey explained and asked for protection, the sergeant granted his request. See id. Bailey asserts that the sergeant escorted him to the medical clinic for a pre-confinement physical examination where his

injuries were evaluated and he was referred to an ENT again. See id. He states that a captain questioned him and took photographs of his injuries, and he was placed in PM custody. See id. Bailey maintains that the FDOC "rounded up" the four inmates who attacked him and issued disciplinary reports. Id. at 13-14. According to Bailey, he saw Florida Representative Kimberly Daniels (a member of the Florida House of Representatives, District 14) at RMC, as she questioned inmates about the abuse at RMC, but he never talked to her because "he was unaware of the officers['] invol[ve]ment" at that time. Id. at 14.

Bailey states that he saw Dr. Fares, an ENT physician, on May 23, 2018, and Fares performed a septorhinoplasty on June 28, 2018, "to relocate his nose to its proper place." Id. He maintains that his fractured cheek bone was "left alone in surgery." Id. He alleges that he had a follow-up appointment on July 18, 2018, after which the FDOC transferred him back to Okaloosa Correctional Institution (OCI), his permanent housing location, on July 27, 2018. See id.

About a month later, the FDOC again transferred Bailey to RMC, this time for a magnetic resonance imaging (MRI). See id. While there, on September 11, 2018, Bailey states that three inmates attacked him with knives in the west unit of D dormitory's wing one. See id. He states that the FDOC placed him in PM custody, "special reviewed" him, and transferred him back to OCI on October 9, 2018. Id. According to Bailey, following his return to OCI, inmate Michael Grier (FDOC #L72642), who had transferred with Bailey to RMC on April 11, 2018, told Bailey that he saw the assailants asking the dormitory sergeant for permission to go to Bailey's wing to rob him, and the sergeant "let them." Id.

at 14-15. Bailey maintains that when he "learned" about the sergeant's involvement, he initiated and exhausted his administrative remedies, and the FDOC responded that the Inspector General's Office would investigate the incident. Id. at 15.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also

Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

### IV. Summary of the Arguments

Defendants request dismissal of Bailey's claims against them because Bailey failed to exhaust his administrative remedies, as required by the Prison Litigation Reform

---

[3] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. See Motion at 9-12. They also argue that Bailey's Complaint is a "shotgun pleading" that violates Federal Rule of Civil Procedure 8(a)(2). Id. at 6-8. Next, they assert that the Eleventh Amendment bars Bailey's claims for monetary damages against them in their official capacities, see id. at 8-9, and that Bailey fails to state plausible Eighth Amendment claims against them, see id. at 13-15. Additionally, they maintain that Bailey is not entitled to injunctive relief. See id. at 15-16. In his Response, Bailey argues that he exhausted his administrative remedies as soon as he discovered the sergeant's involvement in the attack. See Response at 2-3. Next, he states that Defendants are "partial[l]y correct" as to their assertion that the Complaint is a shotgun pleading because he "was forced to be vague" due to an inability to obtain FDOC reports that would reveal staff names. See id. at 1. He also asserts that he states plausible Eighth Amendment claims against Defendants, and that they are not entitled to Eleventh Amendment immunity. See id. at 2-3.

## V. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Bailey is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant

7

v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[4] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to pursuing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has

---

[4] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[5] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

### B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First,

---

[5] Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. See FLA. ADMIN. CODE r. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See FLA. ADMIN. CODE r. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. See FLA. ADMIN. CODE r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits apply. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. See FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without

10

further processing if, following a review of the grievance, one or more . . . conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(y). Some of the reasons for returning a grievance are: untimeliness; the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or he did not provide the required attachments. See FLA. ADMIN. CODE r. 33-103.014(1).

### C. Bailey's Exhaustion Efforts

Defendants maintain that Bailey failed to properly exhaust his administrative remedies as to his Eighth Amendment claims against them before filing the instant § 1983 lawsuit. See Motion at 9-12. In support of their position, they submitted the relevant grievances and responses. See Doc. 21-1 at 21-32. Bailey asserts that he submitted an informal grievance on January 14, 2019, within twenty days of Grier telling him that he had seen a sergeant allow the assailants to enter the wing to attack Bailey on April 19, 2018. See Response at 2-3. Bailey attached exhibits in support of his position. See Doc. 22-1 at 1-6.

The documents attached to Bailey's Response and Defendants' Motion reflect that Bailey submitted the following grievances related to the April 19, 2018 incident and his

PM confinement at RMC. Bailey submitted an informal grievance at RMC on June 20, 2018, stating that he was in PM confinement against his will, was "not in fear" for his life, and wanted to be released from confinement and returned to the compound. See Doc. 21-1 at 25. The FDOC denied the grievance on June 25, 2018, stating in pertinent part:

> I have received, reviewed and evaluated your informal grievance. A review of the automated database reflects you are at RMC for medical services. You currently have a medical hold til[] July 5, 2018. Once this hold has been removed you will be setup for a transfer. The decision of the State Classification Office is for you to remain in administrative confinement until you transfer to resolve your protection issue.

Id. On July 1, 2018, Bailey submitted a formal grievance to RMC Warden, stating in pertinent part:

> This is a follow up on the denial of my informal grievance (attached) about me being held in confinement under protective custody against my will.
>
> I contend this is unfair treatment as one: I never asked to be placed in to [sic] PC [(protective confinement)], I have done nothing wrong, [and] I am not in fear for my life. And two: It is completely unfair that I am suffering in confinement, being treated like a DC [(disciplinary confinement)] inmate because your officers allowed four gang members off their wing in I-block on to my wing of I-block, so they could jump me [and] rob me. And those four inmates are back in open population on this compound, while I'm forced to be in PC against my will.
>
> I have been in confinement over 60 days, enough time to pay for those four inmates['] actions [and] your officers[']. I shouldn't be punished for the actions of others. The relief I seek is to be release[d] from PC/confinement.

Id. at 23. The FDOC denied the grievance on July 11, 2018, stating in pertinent part:

> Your request for administrative remedy has been received and reviewed. A review of your electronic file reflects you are housed in administrative confinement for protection[] needs.

> A final decision was made by the State Classification Office for you to remain in administrative confinement until you transfer to resolve your protection issue. You are currently housed at RMC for medical services. You currently have a medical hold til[] 8/5/18. You will continue to be housed in administrative confinement for protection needs until you transfer.

Id. at 23. Bailey submitted a Request for Administrative Remedy or Appeal on July 20, 2018, to the FDOC Secretary, stating in pertinent part:

> This is an appeal about the unfair treatment I am receiving here at RMC.
>
> I was placed in confinement for protection on 4-19-18, [and] a report was wrote [sic] that I asked for protection. This is a lie. I never asked to be placed in protection. I have never seen [the] ICT [(institutional classification team)] and I have signed a waiver to get out of confinement. I am being punished for no re[a]son. I have been in confinement for over 90 days now. I do not want protection, or need it. And I have done nothing wrong. I am not af[]raid for my life, because my life is not in danger.
>
> The relief I seek is to be release[ed] f[rom] protection [and] confinement.

Id. at 22. A. Keaton denied the appeal on August 7, 2018, stating that the response Bailey received at the institutional level appropriately addressed his concerns. See id. at 21.

Additionally, Bailey submitted an informal grievance to OCI classification officers on January 14, 2019. See Doc. 22-1 at 1-2. In the grievance, Bailey stated that he needed access to records (the April 19, 2018 incident report, photographs, and any other documents related to the incident) to "file suit against the officer[s] [who] (through their negligence)" allowed the incident to take place. See id. at 2. The FDOC responded on

January 25, 2019, advising Bailey that he should request the information from the institution where the incident occurred. See id. at 1.

Additionally, on January 14, 2019, Bailey submitted an informal grievance, stating in pertinent part:

> This grievance concerns the harm (physical, psychological, [and] emotional) I am now suffering from an incident that occurred at RMC.
>
> Grievant was transferred to RMC on 4-11-18 for Physical Therapy. While housed at RMC Main Unit in I-Block dormitory wing two cell 209 upper the morning of 4-19-18 the **unknown officers working in I-Block negligently allowed four inmates off of their assi[gn]ed wings on to Grievant[']s assi[gn]ed (wing two) to assault [and] commit aggravated battery on Grievant causing him great bodily harm. This cruel and negligent act by the officers caused Grievant to be sent to an outside hospital for reconstructive surgery.**
>
> Because of these officers['] acts[,] Grievant is now suffering as he still needs medical treatment from RMC but is unwilling to go back there. This is not an isolated incident, [and] is why Grievant is in fear to go back . . . to RMC.
>
> The relief I seek is for all of the officers that were working I-Block the morning of 4-19-18 be named in the response [and] reprimanded for their negligence. Also, as this isn't an isolated incident, Grievant wishes to be "Red Flagged" from RMC [and] be seen by an outside hospital or another medical facility.

Doc. 21-1 at 30, 32 (emphasis added). The FDOC denied the grievance on January 15, 2019, stating in pertinent part:

> Your grievance has been received[,] reviewed[,] and evaluated.
>
> **Your allegations of staff negligence have been reported to the Office of the Inspector General for review and**

> **action if necessary. A special review is in place against**
> **the other inmates.** A special review against the institution will
> not be placed at this time.

Id. at 30 (emphasis added). On January 19, 2019, Bailey submitted a formal grievance to

the OCI Warden, stating in pertinent part:

> This formal grievance is in response to the denial of my
> informal grievance. (see attached)
>
> I contend the denial is inappropriate. As can be seen in
> my records, I have been jumped by gang members at RMC[.]
> [B]oth times I have been sent there for medical reasons last
> year. Now I am being hampered to receive treatment as I
> refuse to go back to RMC, which is why I wish to be special
> reviewed from there. I should not be forced to go to an unsafe
> institution that is r[u]n by the inmate gangs [and] not the
> officers.
>
> Also, I still wish for the officers['] names that were
> working the morning (day shift) of 4-19-18 in I-Block at the
> Main Unit.
>
> Therefore, the relief I seek is for there to be a special
> review placed on me from RMC [and] for all of the officers[']
> names that were negligent on 4-19-18[.]

Id. at 31. The FDOC denied the formal grievance on January 28th, stating in pertinent

part:

> Inmate Bailey, your Request for Administrative Remedy or
> Appeal ha[s] been received, reviewed, and evaluated and the
> following information is provided to address your concerns.
>
> You have the option to refuse any treatment and are not
> forced to go to RMC. We do not have access to RMC's rosters
> to provide you with staff[] names on a specific date. As
> previously stated, you are special reviewed against the
> inmates, however a special review against the facility is not
> warranted at this time.

Id. at 29. Bailey submitted a Request for Administrative Remedy or Appeal on January

28, 2019, to the FDOC Secretary, stating in pertinent part:

> This appeal concerns the denial of my formal grievance. (see attached)
>
> I contend that the denial of my formal grievance jeopardizes me in two ways. First, not special reviewing me from RMC puts me at risk if I am forced to go back there for further medical treatment, exams, or test[s] as the officers condone violence among inmates which was stated by the officers stationed in I-Block on 4-19-18. When I asked them for protective management[,] the officers stated not only did they know what happens in their Dorm, but they don't protect "pussies" which forced me to seek protective management at the chow hall as reports state. Further misconduct can also be seen in my only other venture to RMC on 9-11-18 at the West Unit, D-Dorm, wing one, where I was again attacked by three other inmates brandishing knives, on camera, where I was forced to seek protective management again. I have been attacked both times I have ever been sent to RMC, requiring 7 special reviews. In 14 years of incarceration[,] I have never had problems like this.
>
> Secondly, I'm in jeopardy to further injure my back as I'm unwilling, as of right now, to seek further medical treatment as they are going to order more test[s] which will require me to go back to RMC. My back has been injured, but after being attacked twice it has gotten worse, which can be seen when after the incident on 4-19-18 I had to declar[e] a medical emergency while in K-Dorm at RMC.
>
> I would also like to point out that if I am not special reviewed from RMC after requesting it, [and] I am forced by DOC to go back there for medical reasons and I am attacked again after putting DOC on notice of the officers['] misconduct there, DOC will be liable for any harm caused at that time....
>
> The relief I seek is that I be special reviewed from RMC so I may continue seeking medical help for my injured back, and for all of the officers [to] be held accountable for their misconduct. (Both the night shift from 4-18-18 which was on

> duty when I got jumped on 4-19-18, [and] the day shift of 4-
> 19-18 that would not let me seek protective management)
>
> > Attention:
> >
> > The point of mentioning the incident on 9-11-18 was to
> > point out that the officer watched what happened [and] didn't
> > call it in until I made it to the officers station. This shows
> > regular occurring misconduct along with what happened on 4-
> > 19-18, and can be seen on camera.

Id. at 27-28. C. Neel denied the appeal on February 7, 2019, stating that the response

Bailey received at the institutional level appropriately addressed his concerns, and the

medical issues should be addressed with the institution's medical department. See id. at

26.

Next, Bailey submitted an informal grievance on March 5, 2019, asserting that the

FDOC failed to respond to his request for records related to the April 19, 2018 incident.

See Doc. 22-1 at 3. State Classification Officer McDowell denied the grievance on March

6, 2019, stating in pertinent part:

> Your informal grievance has been received, reviewed and
> evaluated. In accordance with Chapter 33-601.901(1)(a)1, no
> inmate or offender under jurisdiction of the department shall
> have unlimited or routine access to any information contained
> in the records of the department unless an exceptional need
> can be demonstrated. You have not demonstrated an
> exceptional need as defined in Florida Statute 945.10(3). If
> you are preparing for a filing, your attorney or the courts can
> request and receive this paperwork as part of the discovery
> process.

See id. According to Bailey's exhibits, he submitted a formal grievance to the Warden on

March 9th, see id. at 4, and appealed the Warden's denial to the FDOC Secretary, see

id. at 5. Neel denied the appeal on March 22, 2019, stating that the response Bailey

17

received at the informal-grievance stage appropriately addressed his concerns. See id. at 6.

As to the initial step in the two-part process for deciding a motion to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam). Accepting Bailey's view of the facts as true, a dismissal of the Eighth Amendment claims against Defendants for lack of exhaustion is not warranted at the first step. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendants' arguments regarding exhaustion and makes findings of fact.

A prisoner must exhaust administrative remedies as to each claim that he seeks to present in court. See Jones, 549 U.S. at 219. Thus, to fully exhaust, Bailey was required to complete the three-step process with respect to his Eighth Amendment claims against Defendants before filing the instant § 1983 lawsuit. Here, although Bailey failed to name the officers involved, the grievances he submitted accomplished § 1997e(a)'s purpose by alerting the prison to Bailey's failure-to-protect issues and giving the FDOC an opportunity to resolve the issues before he initiated a lawsuit. Thus, Bailey sufficiently exhausted his

18

Eighth Amendment claims in this action, and Defendants' Motion is due to be denied as to their assertion that Bailey failed to properly exhaust his claims against them.

## VI. Analysis

### A. Federal Rule of Civil Procedure 8

Defendants contend that Bailey's Complaint is a "shotgun pleading" that violates Federal Rule of Civil Procedure 8(a)(2). See Motion at 6-8. In his Response, Bailey states that he was "vague" as to his assertions in the Complaint because he was not able to obtain FDOC reports that would reveal staff names. See Response at 1. Nevertheless, he maintains that he will be more specific as to which sergeant or officer "did what" when he obtains the necessary documents during discovery. Id. Additionally, he asserts that Sergeant Potosky "is presumably" the I-block dormitory sergeant who denied him protection and gave the assailants permission to enter the wing to attack him. Id. at 1-2. He clarifies that the other sergeant, the one who granted him protection, see Complaint at 13, is not named as a Defendant, see Response at 2.

A civil rights complaint must include a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). While not required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Indeed, a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). To avoid dismissal for failure to state a claim on which relief can be granted, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

19

misconduct alleged." Id. Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Notably, a "shotgun pleading" is a complaint that fails to comply with Rule 8(a)(2) because it contains numerous causes of action adopting the factual allegations of all proceeding counts; is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; does not separate causes of action into separate counts; or asserts multiple claims against multiple defendants while failing to specify which defendants are responsible for which acts or omissions. Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015).

In the Complaint, Bailey asserts that an I-block dormitory sergeant (now identified as Sergeant Potosky, see Response at 1-2) denied him protection and allowed the assailants to enter the wing to assault him. See Complaint at 14-15. Notably, Bailey's assertions in the Complaint as to Potosky's involvement do not make it "virtually impossible" for Potosky to know "which allegations of fact are intended to support which claim(s) for relief." Weiland, 792 F.3d at 1325 (emphasis and quotation marks omitted). Thus, Defendants' Motion is due to be denied as to the assertion that the Complaint violates Rule 8 with respect to Bailey's claims against Defendant Potosky.

Additionally, in the Complaint, Bailey asserts in a conclusory manner that the Warden (identified as Robert J. Smith, Jr.), the Assistant Warden (identified as Major Richard Lukens), and Colonel (identified as Stanley Peterson) violated his Eighth Amendment rights when they ignored a history of widespread abuse and their officers' misconduct. He fails to assert any facts supporting a history of widespread abuse or any

20

facts as to how the Warden, the Assistant Warden, and the Colonel violated his federal constitutional rights and/or were involved in the alleged abuse. Thus, Defendants' Motion is due to be granted, and Bailey's claims against Defendants Smith, Lukens, and Peterson are due to be dismissed. See Iqbal, 556 U.S. at 678.

## B. Eighth Amendment Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). It is "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Id. at 828 (citations omitted). The deliberate indifference standard requires the plaintiff to demonstrate that the prison official "was subjectively aware" of a risk of harm; mere negligence is insufficient. Id. at 829, 835-36. In a case where the prisoner-plaintiff repeatedly asked to be transferred because he was concerned about a general lack of safety in his cell block, the Eleventh Circuit explained the requirement of deliberate indifference to a substantial risk of harm as follows:

> To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."[6]
>
> **The first element** of deliberate indifference — whether there was a substantial risk of serious harm — is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."[7] **The second element** — whether the defendant was deliberately indifferent to that

---

[6] Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016).

[7] Lane, 835 F.3d at 1307.

> risk — has both a subjective and an objective component.
> Subjectively, the "official must both be aware of facts from
> which the inference could be drawn that a substantial risk of
> serious harm exists, and . . .  also draw the inference."[8]
> Objectively, the official must have responded to the known risk
> in an unreasonable manner, in that he or she "knew of ways
> to reduce the harm" but knowingly or recklessly declined to
> act.[9] Finally, the plaintiff must show a "necessary causal link"
> between the officer's failure to act reasonably and the
> plaintiff's injury.[10]

Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019); Johnson v. Bessemer, Ala.,

City of, 741 F. App'x 694, 698-99 (11th Cir. 2018) (per curiam).

The Eleventh Circuit has explained:

> Proof of deliberate indifference requires a great deal more
> than does proof of negligence: "To be deliberately indifferent
> a prison official must know of and disregard 'an excessive risk
> to inmate health or safety; the official must both be aware of
> facts from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must also draw
> the inference.'" Purcell, 400 F.3d at 1319-20 (emphasis
> supplied) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114
> S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).[11]

> In other words, a plaintiff in [Bailey's] position must
> show not only that there was a substantial risk of serious
> harm, but also that [Defendant] "subjectively knew of the
> substantial risk of serious harm and that [he] knowingly or
> recklessly disregarded that risk." Hale, 50 F.3d at 1583
> (alteration omitted) (internal quotation marks omitted).[12]
> Whether prison officials had the requisite awareness of the

---

8 Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007).

9 Rodriguez, 508 F.3d at 620.

10 Rodriguez, 508 F.3d at 622-23.

11 Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313 (11th Cir. 2005).

12 Hale v. Tallapoosa Cnty., 50 F.3d 1579 (11th Cir. 1995).

> risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S. Ct. at 1981 (citation omitted). At the same time, the deliberate indifference standard - and the subjective awareness required by it - is far more onerous than normal tort[-]based standards of conduct sounding in negligence: "Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam). And[,] needless to say, to defeat a motion for summary judgment, [a plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor; "[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient." Anderson, 477 U.S. at 252. . . .

Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (emphasis deleted);

Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (per curiam) (stating that a plaintiff

who claims deliberate indifference must prove: "(1) subjective knowledge of a risk of

serious harm; (2) disregard of that risk; (3) by conduct that is more than mere

negligence"); Scott v. Miami Dade Cnty., 657 F. App'x 877, 883 (11th Cir. 2016) (stating

that "a plaintiff must allege facts that would allow a jury to conclude that: the defendant

actually knew that the plaintiff faced a substantial risk of serious harm" (subjective

component), and "the defendant disregarded that known risk by failing to respond to it in

an objectively reasonable manner" (objective component)); Brown v. Hughes, 894 F. 2d

1533, 1537 (11th Cir. 1990) ("The known risk of injury must be a 'strong likelihood, rather

than a mere possibility' before a guard's failure to act can constitute deliberate

indifference.").

Prison officials may avoid Eighth Amendment liability in one of three ways: (1)

showing that they were not subjectively aware "of the underlying facts indicating a

23

sufficiently substantial danger and that they were therefore unaware of a danger"; (2) admitting awareness of "the underlying facts" of a substantial danger, but believing the danger was "insubstantial or nonexistent"; or (3) claiming they responded reasonably to a known substantial danger. Rodriguez, 508 F.3d at 617-18 (quoting Farmer, 511 U.S. at 844) (internal quotations omitted).

In the Complaint, Bailey asserts that the I-block dormitory sergeant (identified as Potosky) denied him protection and gave the assailants permission to enter the wing to attack him on April 19, 2018. See Complaint at 14-15. Defendant Potosky maintains that Bailey fails to state a plausible Eighth Amendment claim against him. See Motion at 13-15. According to Bailey, he states a plausible Eighth Amendment claim against Potosky because Potosky aided the assailants in the April 19th attack when he gave them access to the wing, and Bailey "provided a witness [(inmate Grier)] to this fact." Response at 3. Having considered the allegations of the Complaint and the arguments of the parties, the Court finds that Bailey has provided sufficient facts to state a plausible Eighth Amendment claim against Potosky. Therefore, Defendants' Motion as to Bailey's Eighth Amendment claim against Defendant Potosky is due to be denied.

### C. Injunctive Relief

In the Complaint, Bailey requests that the Court issue an injunction directing Defendants to "special review" him from RMC and Defendants so that the FDOC does not return him to RMC. Complaint at 5, Section VI. ¶ 2. Defendants maintain that Bailey fails to state a plausible claim as to his request for a "special review" from Defendants

and RMC. <u>See</u> Motion at 15-16. They assert that Bailey is no longer housed at RMC, and has not asserted that he is in actual or imminent danger. <u>See id.</u> at 15.

Bailey's request for injunctive relief is due to be dismissed. According to Bailey, the FDOC temporarily housed him at RMC for medical reasons (physical therapy on his back and an MRI), <u>see</u> Complaint at 5, 14, and "special reviewed" him from the inmates who allegedly attacked him, <u>see id.</u> at 14. He maintains that OCI is his "permanent institution." <u>See id.</u> An inmate's request for injunctive relief related to his conditions of confinement becomes moot when he is transferred to a different correctional facility. <u>See</u> <u>Spears v. Thigpen</u>, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding the plaintiff's claims for injunctive relief related to conditions of confinement at a previous correctional facility were subject to dismissal because those claims "no longer presented a case or controversy"); <u>see also</u> <u>Davila v. Marshall</u>, 649 F. App'x 977, 979 (11th Cir. 2016) ("[A] prisoner's request for injunctive relief ... becomes moot when he is transferred."). Bailey is now housed at OCI in Crestview, Florida, where he has access to the institution's medical clinic. Also, he may seek relief by initiating a grievance pursuant to the administrative grievance procedures and/or contact his classification officer to address concerns he may have about access to specialized medical care. Therefore, his request for injunctive relief based on events occurring at RMC is moot. Thus, Defendants' Motion as to Bailey's request for injunctive relief is due to be granted.

### D. Eleventh Amendment Immunity

Defendants assert that, to the extent they are sued in their official capacities, they are entitled to Eleventh Amendment immunity. <u>See</u> Motion at 8-9.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) (per curiam).

In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble,[13] 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the FDOC Secretary was immune from suit in his official capacity. Id. Thus, insofar as Bailey may be seeking monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit. Therefore,

---

[13] Gamble v. Fla. Dep't of Health & Rehab. Serv., 779 F.2d 1509 (11th Cir. 1986).

Defendants' Motion is due to be granted to the extent that Bailey requests monetary damages from Defendants in their official capacities.

In consideration of the foregoing, it is now

**ORDERED**:

1.      Defendants' Motion to Dismiss (Doc. 21) is **PARTIALLY GRANTED** as to Bailey's (1) Eighth Amendment claims against Robert J. Smith, Jr., Richard Lukens, and Stanley Peterson; (2) request for injunctive relief; and (3) claims for monetary damages against Defendants in their official capacities. Otherwise, the Motion is **DENIED**.

2.      The Clerk shall terminate Robert J. Smith, Jr., Richard Lukens, and Stanley Peterson as Defendants in the case.

3.      Defendant Potosky must file an Answer to the Complaint **no later than November 25, 2020.** Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of October, 2020.

MARCIA MORALES HOWARD
United States District Judge

sc 10/20
c:
James Bailey, FDOC #Q13954
Counsel of Record